PACIFIC EMPLOYERS INDEMNITY
COMPANY, now: INA of
Texas, Appellant,

v.

Betty L. CUSTER et al., Appellees.

No. 5636.

Court of Civil Appeals of Texas,
Waco.

Aug. 26, 1976.
Rehearing Denied Sept. 23, 1976.

Robert Summers, Clark, Thornton & Summers, San Antonio, for appellant.

Frank R. Southers, Clem Lyons, Southers, Goldberg, Lyons & Huson, Inc., George Rigely, San Antonio, for appellees.

OPINION

McDONALD, Justice.

This is a workmans compensation case. Appellant Pacific, the insurance carrier filed suit to set aside final award of the Industrial Accident Board awarding death benefits to appellees, because of the death of Edwin D. Custer. Appellee's widow and minor children of Edwin D. Custer answered, and cross actioned seeking death benefits under the compensation law.

Appellees alleged Edwin D. Custer, on April 5, 1974, while working in the course of his employment for Handy Andy Inc., "suffered a bodily injury to his head, brain and body generally, as a result of physical exertion, which injury caused or contributed to cause his death on April 9, 1974", and, if at the time such injuries were sustained Edwin D. Custer was suffering from any disease or condition, then the same was not disabling, and said injuries caused such disease or condition to become aggravated, excited, precipitated, worsened, or accelerated, so that the same caused or contributed to cause said injury and resulting death of Custer.

Appellant alleged Custer's death was solely caused by prior or subsequent diseases namely "intra-cerebral hemorrhage of the right hemisphere, acute bronchopneumonia, central nervous system anoxic degeneration, mild nephrosclerosis, mild arteriosclerotic heart disease".

Trial was to a jury which found:

1) Custer received an injury on or about April 5, 1974.

2) Which was in the course of his employment by Handy Andy, Inc.

3) And that such injury was a producing cause of the death of Custer.

The trial court rendered judgment on the verdict for death benefits for appellees.

Appellants appeal on 6 points contending the trial court erred:

1) In refusing to submit Appellant's Requested Issue 1–A with accompanying instruction.

2) In refusing to submit Appellant's Alternate Requested Issue 1–A with accompanying instruction.

3) In rendering judgment for appellees because there is no evidence to support the jury's answer to Issue 1.

4) In rendering judgment for appellees because there is no evidence to support the jury's answer to Issue 2.

5) In rendering judgment for appellees because there is no evidence to support the jury's answer to Issue 3.

6) In overruling appellant's objection to the hypothetical question propounded to Dr. Lewis Helfer by counsel for appellees.

Points 1 and 2 complain of the refusal of the trial court to submit its Requested Issues 1–A and Alternate 1–A.

The trial court submitted issues with accompanying instructions as follows:

"1) Do you find from a preponderance of the evidence that Edwin Custer received an injury on or about April 5, 1974?

"Injury means damage or harm to the physical structure of the body and such diseases or infections as naturally resulting therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity or condition, previously or subsequently existing, by reason of such damage or harm.

"There can be no 'injury' as defined, if any damage or harm was solely caused by any pre-existing event or bodily condition or any subsequently developing event or bodily condition not incited, accelerated or aggravated by the movement of the acetylene bottles, and you are instructed that the burden is on the plaintiff to establish that such pre-existing or subsequent event or bodily condition was not the sole cause of any damage or harm.

"Answer 'we do' or 'we do not'

"Answer _____.

"If you have answered Issue 1 'we do', then please answer Issue 2. Otherwise, do not answer Issue 2.

"2) Do you find from a preponderance of the evidence that Edwin Custer received an injury in the course of his employment by Handy Andy, Inc.?

"Injury in the course of employment means any injury having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs of business of his employer, whether upon the employer's premises or elsewhere.

"Answer: 'we do' or 'we do not'

"Answer: _____.

"If you have answered Issue 2 'we do' then please answer Issue 3. Otherwise do not answer Issue 3.

"3) Do you find from a preponderance of the evidence that such injury was a producing cause of the death of Edwin Custer?

"'Producing cause' means any injury or condition which, either independently or together with one or more other injuries or conditions, resulted in death, and without which such death would not have occurred when it did.

"An injury cannot be a 'producing cause' of death, if the death was solely caused by any event or bodily condition which pre-existed or developed subsequent to the movement of the acetylene bottles. You are instructed the burden is on the plaintiff to establish that such pre-existing or subsequent event or bodily condition was not the sole cause of the death".

Appellant requested the following additional issues which the trial court refused to submit.

"1–A. Do you find from a preponderance of the evidence that such injury was the result of an accident?

"'Accident' means an undesigned or ·unexpected occurrence, traceable to a definite time and place and an injury is not the result of an accident if it was the result of natural cause or causes.

"Alternate 1–A. Do you find from a preponderance of the evidence that such injury was the result of an accident?

"'Accident' means an undesigned or unexpected occurrence, traceable to a definite time and place".

The evidence shows without dispute that the deceased on April 5, 1974 had to move two acetylene tanks on a two-wheel dolly, and that such apparatus was heavy, weighing from 120 to 300 pounds; that when deceased moved the acetylene tanks he turned red, had pain in his head, looked tired; went to the restroom where he vomited; had difficulty with his hands the next day and complained he was ill and went home from work in the morning; had a splitting headache and was getting weaker, was taken to the hospital April 6; arrived in a coma; and died on April 9, of an intra cerebral hemorrhage.

Succinctly stated it was appellee's position that deceased suffered an injury on April 5, 1974 due to the strain from lifting the heavy acetylene bottles which was a producing cause of his stroke and subsequent death.

Appellant's position was that deceased pre-existing condition was the sole cause of deceased's death.

For there to be an accidental injury, or an industrial accident, there must be an undesigned, untoward event traceable to a definite time, place and cause. *Olson v. Hartford Accident & Indemnity Co.*, Tex., 477 S.W.2d 859. *Solomon v. Massachusetts Bonding & Insurance Co.*, (Tex.Civ.App., San Antonio) er. ref., 347 S.W.2d 17.

The evidence here traces the accidental injury to the employer's premises on April 5, 1974 when deceased strained to lift the heavy acetylene bottles.

Issue 1 with its instructions inquired if deceased received an "injury" on April 5, 1974, informing the jury that he could not have received an "injury" if any damage or harm was solely caused by bodily condition before he moved the acetylene bottles or by any event or bodily condition after he moved the bottles.

Issue 2, conditioned on affirmative answer to Issue 1 inquired if such injury was received in the course of employment.

Issue 3, conditioned on affirmative answer to Issue 2 inquired if such injury was a producing cause of deceased's death, instructing the jury that to be a producing cause of deceased's death, such death must not have been solely caused by any event or bodily condition before he moved the bottles or by any event or bodily condition after he moved the bottles.

These issues and instructions, with the burden placed on appellees, focused the jury's attention on one event, one time, one place and one cause: deceased's movement

of the acetylene bottles. Every event and bodily condition before was eliminated from consideration, and every event and bodily condition after the movement of the bottles was eliminated.

 Where the court fairly submits the controlling issues raised by the pleadings and evidence, it may properly refuse to submit other issues which are but various phases or different shades of the same issue TRCP 279; *Guzman v. Maryland Cas. Co.*, 130 Tex. 62, 107 S.W.2d 356.

The jury was given a fair and adequate opportunity to determine whether deceased's work in moving the acetylene bottles was a producing cause of his death, or whether it was solely caused by a pre-existing condition.

Points 1 and 2 are overruled.

Points 3, 4 and 5 assert there was no evidence to support Issues 1, 2 and 3; and point 6 asserts the trial court erred in overruling appellant's objection to the hypothetical question by appellees to Dr. Lewis Helfer.

Dr. Helfer, an expert witness, in answer to a hypothetical question testified the strain experienced by deceased was a producing cause of his death. His testimony was based in part upon assumptions stated in the question, and in part upon hospital records of the deceased which were never introduced into evidence.

Assuming without deciding that the trial court should have sustained objection to the hypothetical question asked Dr. Helfer there is still other evidence which sustains the jury's answer to Issues 1, 2, and 3.

It is undisputed that deceased moved some heavy acetylene bottles, at work on his employer's premises on April 5, 1974. His co-worker, the witness Heye, testified his face became red, he complained of pain in his head, looked tired, vomited, and had hand problems.

Dr. Coghlin testified his first examination of deceased showed him comatose, that his left lower extremities and left upper extremities were placid, while his right ones

had seizure like activity; and that deceased's moving the acetylene tanks, as related to the injury, was probably the beginning of his symptoms of the bleeding. It is undisputed deceased suffered bleeding inside the brain and that this bleeding began on the right side of the brain.

Dr. Helfer testified deceased died of an intracranial hemorrhage. Dr. Queen testified the bleeding on the right side of his head caused deceased's death. Dr. Coghlin further testified the cause of deceased's death was an intracerebral hemorrhage, a type of cerebral vascular accident. Dr. Helfer testified by deposition "the man lifted the tanks and when he lifted the tanks, or the acetylene bottles, that that caused him to start bleeding in the right side of his head"; and further testified that the lifting of the bottles caused the blood pressure to increase sufficiently to burst the blood vessel; and that the strain was a producing cause of deceased's death.

There is evidence to support the jury's answers to Issues 1, 2 and 3.

Points 3, 4, and 5 are overruled.

AFFIRMED.